UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLTON WEST,

        Plaintiff,                      CIVIL ACTION NO. 07-11081

       v.                               DISTRICT JUDGE ANNA DIGGS TAYLOR

MICHIGAN DEPARTMENT OF        MAGISTRATE JUDGE VIRGINIA M. MORGAN
CORRECTIONS, INSPECTOR
PUTNAM, and S. KRONBERG,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

**I. Introduction**

This is a *pro se* 42 U.S.C § 1983 action in which the plaintiff, an inmate in the custody of the Michigan Department of Corrections (MDOC), alleges that the defendants, the MDOC and employees of the MDOC, violated his rights under the United States Constitution. The matter comes before the court on defendants' motion for summary judgment (D/E #8). For the reasons stated below, the court recommends that defendants' motion be **GRANTED IN PART** and that defendants be granted summary judgment on plaintiff's claims against the MDOC, plaintiff's claims against Kronberg and Putnam in their official capacities, and plaintiff's due process claims against Kronberg and Putnam in their individual capacities. These are the only claims argued by defendants. Because it appears that plaintiff may be alleging other claims, the Court

-1-

recommends that plaintiff be granted leave to file an amended complaint within 30 days clearly detailing his remaining claims.[1]

## II. Background

### A. Complaint

On March 13, 2007, plaintiff filed a complaint against defendants (D/E #1). In the complaint, plaintiff alleged that, on March 12, 2003, defendant Kronberg, a correctional officer, searched plaintiff's cell at the G. Robert Cotton Correctional Facility in Jackson, Michigan, and seized some of plaintiff's property; a photo album, photos, letters, and assorted papers. (Complaint, pp. 6-7) On July 10, 2003, plaintiff asked defendant Putnam about the seized property, but Putnam failed to respond. (Complaint, p. 7) On July 15, 2003, plaintiff filed a grievance over the seizure of his property. (Complaint, p. 7)

On July 25, 2003, Kronberg and a correctional officer named Johnson searched plaintiff's cell. (Complaint, p. 7) During the search, Johnson told plaintiff that the search was made per Putnam's orders. (Complaint, p. 7) Kronberg and Johnson seized plaintiff's leather belt as part of their search. (Complaint, p. 7)

On July 30, 2003, plaintiff was called in to Putnam's office, where Putnam attempted to convince plaintiff to renounce the grievance plaintiff had filed. (Complaint, p. 8) Plaintiff replied that he just wanted a hearing regarding his property. (Complaint, p. 8) Putnam then conditioned the return of the property on plaintiff withdrawing the grievance. (Complaint, p. 8)

---

[1] Plaintiff attempted to file an amended complaint on August 3, 2007 (D/E #9), but he failed to get the written consent of the defendants or the leave of the Court before doing so, as required by Fed. R. Civ. P. 15(a)(2).

Plaintiff asked if he could just send his property home, but Putnam refused. (Complaint, p. 8) Putnam told plaintiff that plaintiff could have a hearing the next week and that he would return the photo album, but plaintiff would have to renounce the grievance. (Complaint, p. 8) Plaintiff signed a form renouncing his grievance. (Complaint, p. 8) Plaintiff also asked about his belt, but Putnam informed him that it was a "gang belt" and that Putnam would have to send it to Lansing. (Complaint, p. 8) Putnam promised the belt would be there for the hearing. (Complaint, p. 8)

On August 1, 2003, plaintiff was told that, per Putnam's orders, he was being moved from J-Unit to H-Unit because plaintiff had been designated STG ("Security Threat Group") II and that he would likely be transferred in the future because of his new security classification. (Complaint, p. 9) Subsequently, plaintiff was told he would to be transferred once there was available space. (Complaint, p. 9) On August 19, 2003, plaintiff was transferred to a maximum security prison. (Complaint, p. 11)

### B. Pending Motion

On July 26, 2007, defendants filed a motion for summary judgment (D/E #8). In that motion, defendants argue that they are entitled to summary judgment because of the absence of a genuine issue of material fact and because of immunity. Specifically, defendants argue that MDOC and the individual defendants in their official capacities have Eleventh Amendment immunity, due process claims cannot be based on contraband property, an administrative hearing is not required before an inmate is given a STG designation, and plaintiff has no physical injury that would permit him to recover mental and emotional damages.

On August 22, 2007, plaintiff filed a response to defendants' motion for summary judgment (D/E #10). In that response, plaintiff argues that he is not attempting to sue the State of Michigan and, instead, seeks to sue state officials in their official and individual capacities. Plaintiff also argues that seized property may form the basis of a due process claim where, as here, the state fails to provide adequate post-deprivation remedies. Plaintiff further argues that money damages are recoverable for emotional damages in cases such as his.

**III. Standard of Review**

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with

specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

## IV. Analysis

### A. Eleventh Amendment Immunity

As argued by defendants, the Eleventh Amendment bars plaintiffs claims against the MDOC as well as plaintiff's claims against MDOC's officials to the extent they are sued in their official capacities. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State. [U.S. Const. amend. XI.]

Courts have construed that language broadly and the Eleventh Amendment generally bars suits in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Skinner v.

Govorchin, 463 F.3d 518, 524 (6th Cir. 2006).² Moreover, "'[i]t is … well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment[,]' if the suit is somehow deemed to be against the State." Doe v. Wigginton, 21 F.3d 733, 736 (6th Cir. 1994), quoting Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

The Eleventh Amendment bars a suit brought in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Alabama v. Pugh, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); Abick v. Michigan, 803 F.2d 874, 876-77 (6th Cir. 1986). Because the MDOC is a state agency and the state of Michigan has not consented to civil rights suits in the federal courts, the MDOC is entitled to Eleventh Amendment immunity. See Pennhurst, 465 U.S. at 100, 104 S.Ct. 900; Pugh, 438 U.S. at 782, 98 S.Ct. 3057; Abick, 803 F.2d at 877.

Moreover, plaintiff's claims against MDOC officials such as Kronberg and Putnam in their official capacities are also deemed to be against the State and are therefore barred by the

---

²As discussed by the Sixth Circuit in Ernst v. Rising, 427 F.3d 351, 358-359 (6th Cir. 2005), a state's immunity comes with a host of exceptions; the immunity does not attach if the lawsuit is not against the state or an arm of the state, the immunity does not extend to counties and similar municipal corporations, the immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law, the immunity may be abrogated by Congress when exercising its enforcement authority under the Fourteenth Amendment, and the immunity does not apply when the federal government brings the lawsuit. Additionally, a state may elect to waive that immunity through legislation through its conduct in litigation. Ernst, 427 F.3d at 358. None of these exceptions are applicable in this case.

Eleventh Amendment. "Whether a suit against State officials in their official capacity is deemed to be against the State depends on whether the plaintiff seeks 'retroactive' or 'prospective' relief". Doe, 21 F.3d at 736. Retroactive relief compensates a plaintiff for a past violation of his legal rights and, while retroactive relief usually takes the form of money damages, that is not necessarily the case. See Cory v. White, 457 U.S. 85, 90 n. 2, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); Doe, 21 F.3d at 736-737. Where an official capacity claim is for retroactive relief, the action is deemed to be against the state whose officers are the nominal defendants. Doe, 21 F.3d at 737.

In this case, plaintiff seeks redress for a past violation of his legal rights and, therefore, the suit is deemed to be against Michigan itself. The State of Michigan, however, has not consented to civil rights suits in federal court. See Johnson v. Dellatifa, 357 F.3d 539, 545 (6th Cir. 2004); Abick v. Michigan, 803 F.2d 874, 877 (6th Cir. 1986); see also Hill v. Michigan, 62 Fed. Appx. 114, 115 (6th Cir. 2003). Therefore, to the extent plaintiff's claims against Kronberg and Putnam are brought against them in their official capacities, the claims are barred by the Eleventh Amendment.

**B. Qualified Immunity**

With respect to the claims against Kronberg and Putnam in their individual capacities, defendants argue that plaintiff's due process claims are barred by their qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001), quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is an

immunity from suit and not a mere defense to liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

A court required to rule upon the qualified immunity issue must first consider whether the facts alleged show the officer's conduct violated a constitutional right. Saucier, 533 U.S. at 201. If a violation could be shown, the court must then ask whether that constitutional right was clearly established. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Saucier, 533 U.S. at 201.

In this case, plaintiff claims that his Fourteenth Amendment right to procedural due process was violated because he did not receive notice or an opportunity to present a defense before his property was seized or before he was designated a security threat. To state a procedural due process claim under § 1983, a plaintiff must demonstrate that he possessed a protected liberty or property interest and that he was deprived of that interest without due process. Hahn v. Star Bank, 190 F.3d 708, 716 (6th Cir. 1999). In this case, plaintiff appears to make claims regarding both a protected property interest and a protected liberty interest.

**1. Due Process Claim Regarding Seizure of Property**

Plaintiff alleges in his complaint that his due process rights were violated when his property was seized without a hearing. The Supreme Court has long recognized that in some

-8-

instances it will be "impracticable" to afford a pre-deprivation hearing. Parratt v. Taylor, 451 U.S. 527, 540-41, 101 S.Ct. 1908, 1915-16, 68 L.Ed.2d 420 (1981), *overruled* on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). As a result, "a state actor's random and unauthorized deprivation of procedural due process cannot be challenged under 42 U.S.C. § 1983 so long as the state provides an adequate post-deprivation remedy." Pilgrim v. Littlefield, 92 F.3d 413, 416-417 (6th Cir. 1996), quoting Albright v. Oliver, 510 U.S. 266, __, 114 S.Ct. 807, 818, 127 L.Ed.2d 114 (1994) (Kennedy, J., concurring). Therefore, the "Parratt doctrine" prohibits procedural due process claims brought under 42 U.S.C. § 1983 where the state provides the claimant an adequate post-deprivation remedy if (1) the deprivation was unpredictable or "random"; (2) predeprivation process was impossible or impracticable; and (3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty. Copeland v. Machulis, 57 F.3d 476, 479-480 (6th Cir. 1995). Moreover, the doctrine enunciated in Parratt has been extended to cover intentional deprivations of property. Hudson v. Palmer, 468 U.S. 517, 533-36, 104 S.Ct. 3194, 3203-05, 82 L.Ed.2d 393 (1984).

In this case, the parties only dispute whether the post-deprivation remedies provided by the State of Michigan are adequate. The Sixth Circuit has found in the past that meaningful post-deprivation remedies are available to plaintiffs under state law to redress the alleged loss of property. Copeland, 57 F.3d at 480; Wilson v. Lane, No. 94-3477, 142 F.3d 438, *1 (6th Cir., March 12, 1998) (table). In Copeland, the Sixth Circuit identified Michigan's adequate post-deprivation remedies as including an action for claim and deliver pursuant to Michigan Court

Rule 3.105, a civil action to recover possession of or damages for goods and chattels unlawfully taken or detained pursuant to M. C. L § 600.2920, the procedure to compensate for alleged unjustifiable acts of state officials pursuant to M.C.L. § 600.6401. Copeland, 57 F.3d at 480. The Sixth Circuit also noted in Copeland that a state agency in Michigan is subject to the Michigan Administrative Procedures Act, M.C.L. §§ 24.201-.403, and that the MDOC. in particular is subject to numerous state laws relating to prisoner grievances. M.C.L. §§ 791.251-.255.

Plaintiff argues that the State of Michigan fails to provide adequate post-deprivation remedies for plaintiff's claim and, therefore, the Parratt doctrine does not apply. Specifically, plaintiff points to arguments he made in a state court action (Plaintiff's Clarify/Reply to Defendant's Motion to Dismiss, attached as Exhibit 18 to Plaintiff's Response to Defendants' Motion for Summary Judgment) and during the MDOC grievance process (Step III Grievance Response, attached as Exhibit 25 to Plaintiff's Motion for Summary Judgment) in an attempt to demonstrate that the remedies were inadequate. However, plaintiff's participation in the state court action and the MDOC grievance process reinforces the view that Michigan's post-deprivation remedies are adequate as plaintiff was given opportunities to present his claim, and to recover the property or be compensated for his damages. Notably, the state court initially ruled in plaintiff's favor, (Order of Michigan Circuit Court Judge William E. Collette, June 29, 2006, attached as Exhibit 19 to Plaintiff's Response to Defendants' Motion for Summary Judgment), before later dismissing plaintiff's claim because plaintiff failed to disclose his past civil actions against the MDOC (Order of Michigan Circuit Court Judge William E. Collette,

July 25, 2006, attached as Exhibit 22 to Plaintiff's Response to Defendants' Motion for Summary Judgment). While plaintiff may not have received the relief he sought, Copeland and plaintiff's own evidence demonstrate that Michigan provides adequate post-deprivation remedies and that defendants' random and unauthorized deprivation of procedural due process cannot be challenged under 42 U.S.C. § 1983. Kronberg and Putnam are therefore entitled to both qualified immunity and summary judgment with respect to plaintiff's due process claim based on the seizure of his property.

**2. Due Process Claim Regarding Security Designation**

In their motion for summary judgment, defendants argue that plaintiff did not have a due process right to a hearing prior to being designated STG II and, consequently, they are entitled to summary judgment on that claim. Plaintiff, however, denies making any such claim and, instead, asserts that the STG II designation was merely a consequence of the unlawful seizure of his property. To the extent plaintiff does make a due process claim, defendants would be entitled to summary judgment.

In Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court held that the only liberty interest a prisoner may protect through § 1983 is "freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandlin, 515 U.S. at 486. However, an increase in security classification, such as being classified as a[n] STG member, does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific

security classification." Harbin-Bey v. Rutter, 420 F.3d 571, 577 (6th Cir. 2005); Watkins v. Putnam, No. 06-12506, 2007 WL 2214540, *2 (E.D. Mich., July 27, 2007) (Ludington, J.)

### C. Mental and Emotional Damages

Defendants also argue that, even if plaintiff's due process claims are not barred by immunity, plaintiff cannot recover any mental or emotional damages. This argument should be moot, given the recommendations made above, but if the issue is reached, plaintiff should be barred from recovering any mental or emotional damages for his due process claims.

Pursuant to 42 U.S.C.A. § 1997e(e):

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Some courts have excluded constitutional claims from § 1997e(e). See Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir.1998) (holding that § 1997e(e) does not apply to First Amendment claims); Mason v. Schriro, 45 F.Supp.2d 709, 719 (W.D. Mo.1999) (holding that § 1997e(e) does not apply to Fourteenth Amendment equal protection claims). However, as noted by the Sixth Circuit in Taylor v. U.S., 161 Fed. Appx. 483, 486-487 (6th Cir. 2005), the majority of courts hold § 1997e(e) applies to all federal prisoner lawsuits. See Thompson v. Carter, 284 F.3d 411, 416 (2d Cir.2002); Searles v. Van Bebber, 251 F.3d 869, 876 (10th Cir.2001); Allah v. Al-Hafeez, 226 F.3d 247, 250-51 (3d Cir.2000); Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir.2004); Davis v. District of Columbia, 158 F.3d 1342, 1348-49 (D.C. Cir.1998). While the Sixth Circuit has not expressly ruled on whether § 1997e(e) applies to all federal prisoner

lawsuits, some unpublished Sixth Circuit cases have applied § 1997e(e) to constitutional claims. See Jennings v. Mitchell, 93 Fed. Appx. 723, 725 (6th Cir. March 12, 2004); Carter v. Tucker, 69 Fed. Appx. 678, 680 (6th Cir. July 1, 2003).[3]

In this case, it is undisputed that plaintiff does not have any physical injuries. Given the plain language of § 1997e(e) as well as the majority view of circuit courts, this court recommends that, to the extent plaintiff can assert a due process claim, he should be barred from recovering any mental or emotional damages on that claim.

**D. Remaining Claims**

Defendants appear to construe plaintiff's complaint as solely alleging due process violations and they limit their motion for summary judgment to those claims. However, while plaintiff's complaint is vague and fails to list his exact claims, it appears to allege more than just due process claims. For example, plaintiff seems to allege that Kronberg and Putnam retaliated against him for filing a grievance after the seizure of his property. Moreover, while plaintiff's attempted amended complaint alleges the same facts, it also lists four separate claims; a retaliation claim, a due process claim, an ex post facto claim, and a conspiracy claim (D/E #9).

---

[3]Judges in the United States District Court for the Eastern District of Michigan have found that § 1997e(e) is unconstitutional to the extent that it precludes recovery of mental and emotional damages for First Amendment retaliation claims in certain circumstances. Siggers-El v. Barlow, 433 F.Supp.2d 811, 815-816 (E.D. Mich.,2006) (Tarnow, J.); Kalasho v. Caruso, No. 04-70859, 2007 WL 2782067, *3 n. 1 (E.D. Mich. September 21, 2007) (Hood, J.). However, those cases go against the majority view and, furthermore, defendants in this case limit their motion for summary judgment to plaintiff's due process claims and make no mention of any retaliation claim.

A *pro se* complaint, must be held to less stringent standards than formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976); Thaddeus-X v. Blatter, 175 F.3d 378, 395 (6th Cir. 1999). Holding plaintiff's complaint in this case to less stringent standards, it appears that, while plaintiff's claims against the MDOC, plaintiff's claims against Kronberg and Putnam in their official capacities, and plaintiff's due process claims against Kronberg and Putnam in their individual capacities should be dismissed, plaintiff has some claims remaining. However, given the vagueness of plaintiff's original complaint, he should be granted leave to file an amended complaint within 30 days of this Report clearly detailing his remaining claims. If that is not done, or the claims are not clearly set forth, the case should be dismissed in its entirety.

## V. Conclusion

For the reasons discussed above, the court recommends that defendants' motion for summary judgment be **GRANTED IN PART** and that defendants be granted summary judgment on plaintiff's claims against the MDOC, plaintiff's claims against Kronberg and Putnam in their official capacities, and plaintiff's due process claims against Kronberg and Putnam in their individual capacities. Additionally, this Court recommends that plaintiff be granted leave to file an amended complaint detailing his remaining claims.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140

(1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.


s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: April 28, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on April 28, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan