UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLTON WEST,

       Plaintiff,                        CIVIL ACTION NO. 07-11081

      v.                              DISTRICT JUDGE ANNA DIGGS TAYLOR

MICHIGAN DEPARTMENT OF      MAGISTRATE JUDGE VIRGINIA M. MORGAN
CORRECTIONS, INSPECTOR
PUTNAM, and S. KRONBERG,

       Defendants.[1]
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This is a *pro se* 42 U.S.C § 1983 action in which the plaintiff, an inmate in the custody of the Michigan Department of Corrections (MDOC), alleges that defendants Putnam and Kronberg violated his rights under the United States Constitution. The matter comes before the court on defendants Putnam and Kronberg's Motion for Summary Judgment (D/E #33). For the reasons stated below, the court recommends that defendants' motion be **GRANTED**, that defendants be granted summary judgment on plaintiff's claims of retaliation and violation of the *Ex Post Facto*

---

[1] All claims against the Michigan Department of Corrections were dismissed by order of the Honorable Anna Diggs Taylor on September 2, 2008 (D/E #17). Plaintiff also named a number of other defendants in a purported amended complaint, but that amended complaint was stricken by order of this court (D/E #25).

-1-

Clause of the United States Constitution, and that the court decline to exercise pendent jurisdiction over plaintiff's state law claim.

## II.  Background

On March 13, 2007, plaintiff filed a complaint against defendants MDOC, Putnam and Kronberg in which he asserted that those defendants had violated his constitutional rights (D/E #1).  The exact claims of plaintiff's complaint were unclear, but he appeared to allege claims of retaliation, violation of the *Ex Post Facto* Clause, larceny and violation of the Due Process Clause among others.

On July 26, 2007, those three defendants filed a motion for summary judgment (D/E #8). In that motion, defendants argued that they were entitled to summary judgment because of the absence of a genuine issue of material fact and because of immunity.  Specifically, defendants argued that MDOC and the individual defendants in their official capacities have Eleventh Amendment immunity, due process claims cannot be based on contraband property, an administrative hearing is not required before an inmate is given a STG designation, and plaintiff had no physical injury that would permit him to recover mental and emotional damages.

On August 22, 2007, plaintiff filed a response to defendants' motion for summary judgment (D/E #10).  In that response, plaintiff argued that he is not attempting to sue the State of Michigan and, instead, he sought to sue state officials in their official and individual capacities.  Plaintiff also argued that seized property may form the basis of a due process claim where, as here, the state fails to provide adequate post-deprivation remedies.  Plaintiff further argued that money damages are recoverable for emotional damages in cases such as his.

On April 28, 2008, this court issued a report and recommendation recommending that defendants' motion be granted in part (D/E #13). Specifically, this court found that defendants should be granted summary judgment on plaintiff's claims against the MDOC, plaintiff's claims against Kronberg and Putnam in their official capacities, and plaintiff's due process claims against Kronberg and Putnam in their individual capacities. This court also recommended that, because it appeared that plaintiff was alleging claims in addition to those identified by defendants, plaintiff should be granted leave to file an amended complaint clearly detailing his remaining claims.

On September 2, 2008, the Honorable Anna Diggs Taylor issued an order adopting the report and recommendation of this court and granting summary judgment with respect to plaintiff's claims against the MDOC, plaintiff's claims against Kronberg and Putnam in their official capacities, and plaintiff's due process claims against Kronberg and Putnam in their individual capacities (D/E #17). Judge Taylor also granted plaintiff leave to file an amended complaint.

On January 29, 2009, plaintiff filed an amended complaint against defendants Putnam and Kronberg (D/E #32). In that amended complaint, plaintiff alleges that, on March 12, 2003, defendant Kronberg, a correctional officer, searched plaintiff's cell at the G. Robert Cotton Correctional Facility in Jackson, Michigan, and seized some of plaintiff's property; a photo album, photos, letters, and assorted papers. (Amended Complaint, ¶¶ 5, 10, 13) On July 10, 2003, plaintiff asked defendant Putnam about the seized property, but Putnam failed to respond.

(Amended Complaint, ¶ 14)  On July 15, 2003, plaintiff filed a grievance over the seizure of his property.  (Amended Complaint, ¶ 15)

Plaintiff also alleges that, on July 25, 2003, Kronberg and a correctional officer named Johnson searched plaintiff's cell and strip searched plaintiff.  (Amended Complaint, ¶¶ 17-19)  During the search, Johnson told plaintiff that the search was made per Putnam's orders.  (Amended Complaint, ¶ 18)  Kronberg and Johnson seized plaintiff's leather belt as part of their search.  (Amended Complaint, ¶¶ 22-23)

Plaintiff further alleges that, on July 30, 2003, plaintiff was called in to Putnam's office and Putnam attempted to convince plaintiff to renounce the grievance plaintiff had filed.  (Amended Complaint, ¶¶ 24-25)  Plaintiff replied that he just wanted a hearing regarding his property.  (Amended Complaint, ¶ 26)  Putnam then conditioned the return of the property on plaintiff withdrawing the grievance.  (Amended Complaint, ¶ 27)  Plaintiff continually refused to sign any renunciation form.  (Amended Complaint, ¶¶ 28-30)  Putnam told plaintiff that plaintiff could have a hearing the next week and that he would return the photo album, but plaintiff would have to renounce the grievance.  (Amended Complaint, ¶ 31)  Plaintiff then signed a form renouncing his grievance.  (Amended Complaint, ¶ 32)  Plaintiff also asked about his belt, but Putnam informed him that it was a "gang belt" and that Putnam would have to send it to Lansing.  (Amended Complaint, ¶ 34)  Putnam promised the belt would be there for the hearing.  (Amended Complaint, ¶ 34)

According to plaintiff's amended complaint, he was subsequently told that, per Putnam's orders, he was being moved from J-Unit to H-Unit, which included harsher conditions, because

plaintiff had been designated STG ("Security Threat Group") II. (Amended Complaint, ¶ 36-41) Plaintiff was also told that he would likely be transferred in the future because of his new security classification. (Amended Complaint, ¶ 37) On August 19, 2003, plaintiff was transferred to another prison, which he claims had even harsher conditions. (Amended Complaint, ¶ 53)

In the "CLAIMS FOR RELIEF" section of his amended complaint, plaintiff alleges that defendants' actions constituted retaliation, an *ex post facto* violation, and theft. (Amended Complaint, ¶¶ 67-80)

On February 24, 2009, defendants Putnam and Kronberg filed the motion for summary judgment pending before the court (D/E #33). In that motion, those two defendants argue that they are entitled to summary judgment and qualified immunity because the plaintiff has not demonstrated that they violated a clearly established federal law. Defendants also argue that the court should decline to exercise pendent jurisdiction over plaintiff's "theft" claim.[2]

Plaintiff's response to defendants' motion for summary judgment was originally due by March 31, 2009 (D/E #34), but, on April 1, 2009, he was granted an extension of time and his response was not due until May 29, 2009 (D/E #38).

A response to defendants' motion for summary judgment was filed on April 6, 2009 (D/E #39) and, in that response, plaintiff argues that genuine issues of material fact preclude summary

---

[2] Defendants further argues that the claims against them in their official capacities were barred by sovereign immunity. However, this court would note that defendants have already been granted summary judgment on the claims against them in their official capacities (D/E #17). To the extent that plaintiff raised the same claims in his amended complaint, those claims should be rejected for the same reasons as before.

-5-

judgment in favor of defendants and that defendants committed adverse actions against plaintiff because of plaintiff's protected conduct.  Plaintiff also argued that defendants forfeited their qualified immunity when they violated plaintiff's clearly established rights.

Another response to defendants' motion for summary judgment was filed on June 4, 2009 (D/E #41) and, in that response, plaintiff essentially repeated the arguments made in his earlier response.  However, unlike his first response, plaintiff's second response was accompanied by affidavits and exhibits (D/E #42, #43, #45).

While plaintiff filed two responses to defendants' motion for summary judgment, it is also possible that he only filed the first response because he had not yet received the order granting him an extension of time to file a response and the due date was approaching.  In light of that possibility, as well as plaintiff's *pro se* status and the fact that his responses are essentially the same, this court will consider all of plaintiff's filings together.

### III.  Standard of Review

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

## IV. Analysis

### A. Qualified Immunity

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001), quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is an immunity from suit and not a mere defense to liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the

earliest possible stage in litigation."  Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

A court required to rule upon the qualified immunity issue must first consider whether the facts alleged show the officer's conduct violated a constitutional right.  Saucier, 533 U.S. at 201.  If a violation could be shown, the court must then ask whether that constitutional right was clearly established.  "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable."  Saucier, 533 U.S. at 201.

Here, defendants argue that they are entitled to qualified immunity and summary judgment on both plaintiff's retaliation claim and his *ex post facto* claim.

**1. Retaliation**

In his first claim, plaintiff alleges that defendants Putnam and Kronberg retaliated against plaintiff for filing a grievance against Putnam by searching his cell and seizing a belt, transferring plaintiff to another housing unit, and transferring plaintiff to another prison. (Amended Complaint, ¶¶ 67-76)

To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) that the adverse action was taken (at least in part) because of the protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  "Although the elements of a

First Amendment retaliation claim are constant, the underlying concepts that they signify will vary with the setting-whether activity is 'protected' or an action is 'adverse' will depend on context." Bell v. Johnson, 308 F.3d 594, 602-603 (6th Cir. 2002) (internal quotation marks omitted).

In this case, defendants argue that no genuine issue of material fact exists with respect to the adverse action element of plaintiff's retaliation claim.  "An adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir. 1999), quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir.1982).  See also Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir. 1998) (requiring plaintiff to prove, for a First Amendment retaliation claim, that "the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity").  Moreover, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law."  Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002).  Unless the claimed retaliatory action is truly inconsequential, the plaintiff's claim should go to the jury. Bell, 308 F.3d at 603.

Also, as the Thaddeus-X court noted, "since there is no justification for harassing people for exercising their constitutional rights, [the deterrent effect] need not be great in order to be actionable."  175 F.3d at 397 (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)).  A constitutional tort, however, requires that the plaintiff suffer an injury, and it would certainly "trivialize the First Amendment to hold that harassment for exercising [one's constitutional

-9-

rights] was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise ...." Thaddeus-X, 175 F.3d at 397, quoting Bart, 677 F.2d at 625. Thus, the test is, if a reasonable trier of fact could conclude that a retaliatory act would deter a person from exercising his rights, then the act may not be dismissed at the summary judgment stage. Bell, 308 F.3d at 603.

In this case, two of the alleged retaliatory actions were a transfer to another housing unit and a transfer to another prison. Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct. See Hix v. Tennessee Dept. of Corrections, 196 Fed. Appx. 350, 358, (6th Cir. August 22, 2006); King v. Zamiara, 150 Fed. Appx. 485, 494 (6th Cir. October 7, 2005); Smith v. Yarrow, 78 Fed. Appx. 529, 543-44 (6th Cir. October 20, 2003) (collecting cases). However, where there are aggravating factors, the courts have been willing to find that a prison transfer would deter a person of ordinary firmness. See Siggers-El v. Barlow, 412 F.3d 693, 704 (6th Cir. 2005); Hix, 196 Fed. Appx. at 358. In Siggers-El, the aggravating factors accompanying the transfer included the loss of a high paying job needed to pay for the plaintiff's attorney and an increased difficulties for the plaintiff's attorney in visiting with or representing the plaintiff because he was moved further away from her. 412 F.3d at 704. See also McWright v. Gerald, No. 03-70167, 2004 WL 768641, *5 (E.D. Mich. March 26, 2004) (Tarnow, J.) (finding that the plaintiff met the elements of a retaliatory transfer claim where evidence suggested a prison transfer was

undertaken purposefully and expressly to interfere with an inmate's right of access to his attorney.)

Here, plaintiff's amended complaint asserts that the transfers placed him in "harsher" conditions, but plaintiff fails to identify what those harsher conditions were or provide any evidence demonstrating the existence of harsher conditions. Similarly, in his responses to defendants' motion for summary judgment, plaintiff asserts that the transfers caused him to lose his work assignment, but there is no evidence submitted regarding that work assignment or any evidence suggesting why losing that assignment would be a sufficient aggravating factor to transform an ordinary transfer into an adverse action. As discussed above, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not usually be amenable to resolution as a matter of law. Bell, 308 F.3d at 603. However, given the complete lack of evidence supporting plaintiff's claims of "harsher conditions" and loss of work in this case, no rational trier of fact could find for plaintiff and the portion of his retaliation claim relying on the transfers should be rejected.

Plaintiff also alleges that the search of his cell and seizure of his belt constituted an adverse action. However, as argued by defendants, unscheduled searches are made pursuant to MDOC policy and plaintiff's belt was determined to be contraband. (Contraband Removal Records, attached as Exhibit B to Defendants' Motion for Summary Judgment; MDOC PD 04.07.112 "Prisoner Personal Property" (effective date November 15, 2004), attached as Exhibit C to Defendants' Motion for Summary Judgment) "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an

action taken against them is considered adverse." Thaddeus-X, 175 F.3d at 398. Here, plaintiff has produced no evidence suggesting that the search and seizure were anything out of the ordinary or atypical to be confined in prison. Nor has he submitted any evidence that the search and removal of contraband would likely chill a person of ordinary firmness from continuing to file grievances. Therefore, no rational trier of fact could find for plaintiff and the portion of his retaliation claim relying on the search and seizure should also be rejected

### 2. *Ex Post Facto*

In his second claim, plaintiff alleges that Putnam's decision to punish him for possessing the belt is an *ex post facto* violation because Putnam was punishing him for something that was not considered a threat to security at the time plaintiff was convicted or sentenced. (Amended Complaint, ¶¶ 77-79)

The *Ex Post Facto* Clause of the Constitution, U.S. Const. art. I §§ 9 and 10, forbids the government from passing any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." Weaver, 450 U.S. at 28 (internal quotation omitted). "To fall within the *ex post facto* prohibition, two elements must be present: (1) the law must apply to events occurring before its enactment, and (2) it must disadvantage the offender affected by it." United States v. Reese, 71 F.3d 582, 585 (6th Cir.1995). The *Ex Post Facto* Clause is intended to provide fair warning about new punishments and to discourage arbitrary and oppressive legislation. Weaver, 450 U.S. at 28. What legislative adjustments transgress the *Ex Post Facto* Clause is a matter of degree and the Supreme Court has previously declined to articulate a single formula for

identifying those legislative changes that have a sufficient effect on substantive crimes or punishments to fall within the constitutional prohibition. California Dep't of Corr. v. Morales, 514 U.S. 499, 509-510, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (citations omitted).

In this case, plaintiff alleges that application of a change in policy regarding the definition of contraband violates the *Ex Post Facto* Clause. However, such a change, to the extent one even occurred, does not offend the *Ex Post Facto* Clause because it does not alter the definition of criminal conduct or increase the punishment for a crime. See Ward v. Jones, 64 Fed. Appx. 422, 424 (6th Cir. 2003) (citing Cutshall v. Sundquist, 193 F.3d 466, 476-477 (6th Cir. 1999) (finding that there was no *ex post facto* violation where a prison seized photographs as contraband even though the photographs had been received before the policy designating them contraband took effect). Therefore, defendant Putnam is entitled to summary judgment on plaintiff's *ex post facto* claim.

### B. Theft

In his third claim, plaintiff alleges that the actions of defendants Putnam and Kronberg in taking plaintiff's personal property without permission constituted theft and a violation of Michigan's larceny statute. (Amended Complaint, ¶ 80) However, this case is brought pursuant to 42 U.S.C § 1983 and to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); Street v. Corr. Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of

substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Plaintiff's theft claim does not involve any specific constitutional right and, therefore, it is not a valid claim under § 1983.[3]

Moreover, to the extent that plaintiff is claiming his state law rights were violated, it is recommended that the court refuse to exercise pendent jurisdiction over such claims. Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison administration. In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. United Mine Workers v. Gibbs, 383 U.S. 715, 726-727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); Moon v. Harrison Piping Supply, et al., 465 F.3d 719, 728 (6th Cir. 2006).

## V. Conclusion

For the reasons discussed above, the court recommends that defendants' motion be **GRANTED**, that defendants be granted summary judgment on plaintiff's claims of retaliation and violation of the *Ex Post Facto* Clause of the United States Constitution, and that the court decline to exercise pendent jurisdiction over plaintiff's state law claim.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as

---

[3] To the extent plaintiff's theft claims can be construed as a constitutional claim, *i.e.* deprivation of property without due process of law, this court would note that plaintiff raised a violation of due process claim in his original complaint and defendants were granted summary judgment on that claim. See Order Adopting Report and Recommendation and Granting in Part Defendants' Motion for Summary Judgment, September 2, 2002 (D/E #17).

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508 (6th Cir. 1991); <u>United States v. Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: September 23, 2009

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on September 23, 2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan